Carla ALDRIDGE, Plaintiff,

v.

TOUGALOO COLLEGE, Defendant.

Civ. A. No. 3:93–cv–208WS.

United States District Court,
S.D. Mississippi,
Jackson Division.

Feb. 1, 1994.

Nancy J. Beck, Jackson, MS, for plaintiff.

A. Spencer Gilbert, III, Rachael A. Hetherington, Barbara Childs Wallace, Jackson, MS, for defendant.

## MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

Before the court is the motion of the defendant, Tougaloo College, for dismissal of this lawsuit pursuant to Rule 12(b)(6),[1] or, alternatively, for summary judgment under Rule 56(c),[2] Federal Rules of Civil Procedure. On April 30, 1993, plaintiff filed this action against the defendant alleging that defendant had violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, the Civil Rights Act of 1866, 42 U.S.C. § 1981, and the Fourteenth Amendment of the United States Constitution. Seeking declaratory and injunctive relief, compensatory and punitive damages, reasonable costs and attorney fees, plaintiff accuses defendant of retaliatory

discrimination. She specifically charges the following: that she was denied the position of Educational Talent Search Coordinator in February, 1991, when the job was awarded to another; that afterwards, in March, 1991, she lodged a written grievance complaining of her non-selection; and that as a result of this filed grievance defendant wrongfully refused to select her for the position in July, 1992, when the job again became vacant. Defendant asserts that under the applicable law and undisputed facts it is entitled to summary judgment. This court agrees.

## I. JURISDICTION

Plaintiff Carla Aldridge is an African American female whose employer since 1990 has been the defendant. The defendant here is Tougaloo College, a private, historically black institution of higher learning located in the State of Mississippi.

This court has jurisdiction of the claims and parties herein under 28 U.S.C. §§ 1331, 1334, 2201, and 2202, as well as 42 U.S.C. § 2000e, et seq.

## II. FACTUAL BACKGROUND

Tougaloo College hired plaintiff Carla Aldridge on February 12, 1990, as an Educational Talent Search Recruiter/Counselor. The position required her to plan services and activities designed to encourage the retention of first-generation college students. Almost a year after she was hired, plaintiff applied for the position of Educational Talent Search Coordinator, a position responsible for supervising all talent search counselors and otherwise coordinating all program activities. In February, 1991, Tougaloo College hired Daniel Genous, an African American male, to fill this position.

---

1. Rule 12(b)(6) provides:

    Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: ... (6) failure to state a claim upon which relief can be granted,....

2. Rule 56(c) provides in pertinent part:

    The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.

On March 29, 1991, plaintiff filed a written grievance in accordance with the procedure set forth in the *Educational Support Staff—Salaried and Hourly Employee Handbook* of Tougaloo College. Plaintiff's two-page grievance began as follows:

> This [grievance] is to state my dissatisfaction with the manner in which [my supervisor] Mrs. Belinda Lee has sought to unilaterally use her position and authority for mistreatment, and discriminatory actions towards me and the Talent Search Department.

With respect to the denied promotion, plaintiff stated:

> 2. *[Educational] Talent Search [Coordinator] vacancy was not posted in the manner that prior promotional opportunities were posted.*
>
> \*     \*     \*     \*     \*     \*
>
> Factor # 2—Normally, promotional opportunities are posted openly on the employees [sic] bulletin board. The [Educational] Talent Search Coordinator vacancy was posted on a board behind the secretary's door. Therefore, I became aware of this vacancy through word of mouth. After inquiring about the vacancy announcement, I was informed by the secretary that the vacancy was posted on a board behind her door.

The above excerpts from plaintiff's grievance constitute the whole of plaintiff's allegations regarding the College's hiring of a new Educational Talent Search Coordinator in 1991.

The position of Educational Talent Search Coordinator became available again in June, 1992. The written job posting for the position announced the same job qualifications that were in place a year earlier, as follows: "Master's Degree in Guidance and Counseling preferred, Educational Administration, or related Behavioral Science considered." Nine individuals, both male and female, applied for the job, and all nine were rejected, including plaintiff. By letter dated July 16, 1992, Tougaloo College informed plaintiff, as well as all the other rejected applicants, that although they had not been selected, the College was reopening the job search and they could reapply for the position.

After rejecting plaintiff and the nine other candidates, Tougaloo College revised the job qualifications for Educational Talent Search Coordinator so that, in addition to counseling experience, the position required an individual who had at least three years of experience in an administrative supervisory capacity in higher education.

On July 17, 1992, plaintiff re-expressed her interest in the position and again was informed by letter dated August 20, 1992, that she had not been selected for the job. Instead, Tougaloo College hired Gloria Blount, an African American female, who met the revised job qualifications.

## III. *PROCEDURAL BACKGROUND*

On September 8, 1992, plaintiff filed a charge with the Equal Employment Opportunity Commission (EEOC) under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. In this charge, she alleged that her grievance filed on March 29, 1991, was a factor in Tougaloo College's decision to change the job qualifications for Educational Talent Search Coordinator in July, 1992, and that she was denied the promotion in retaliation for having filed the grievance. Plaintiff characterized her grievance as a complaint against sex discrimination by the College. In a letter dated February 22, 1993, plaintiff, through her retained attorney, asked the EEOC to end its investigation of her charges and to issue a right-to-sue letter as provided by statute, which it did on March 31, 1993.

On April 30, 1993, plaintiff filed this action alleging that Tougaloo College's "maintenance of a pattern and practice of discrimination on the bases of intentional retaliatory discrimination directed to Plaintiff Aldridge" violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, the Civil Rights Act of 1866, 42 U.S.C. § 1981, and the Fourteenth Amendment of the United States Constitution. In her complaint, plaintiff seeks declaratory and injunctive relief, compensatory and punitive damages, reasonable costs, and attorneys' fees.

## IV. *RULE 56 STANDARD*

The evidentiary production burdens triggered by the filing of a motion under Rule 56

are quickly discerned from the clear language of Rule 56 and from the host of cases which have provided interpretative guidance. *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Washington v. Armstrong World Indus.,* 839 F.2d 1121 (5th Cir.1988). Once the defendant has moved for summary judgment, the non-moving party is required to respond with proof of a *prima facie* case, sufficient for a jury to enter a verdict in its favor. *Washington,* 839 F.2d at 1122–23. Rule 56(c) mandates summary judgment in any case where a party fails to establish the existence of an element essential to the case and on which that party has the burden of proof. *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2553. When the moving party has carried the Rule 56(c) burden, the opposing party must present more than a metaphysical doubt about the material facts in order to preclude the grant of summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## V. *PLAINTIFF HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964.*

Section 704(a) of Title VII, 42 U.S.C. § 2000e–3(a), provides protection against retaliation for employees who oppose unlawful employment practices committed by an employer and for employees who participate in Title VII proceedings:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice and made an unlawful employment practice by this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Title.

*Id.* Section 703(a)(1) of Title VII, which deals with unlawful employment practices, states in pertinent part:

> (a) It shall be an unlawful employment practice for an employer—
>
> > (1) To fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin....

42 U.S.C. § 2000e–2(a)(1).

In this case, plaintiff alleged in her EEOC charge filed on September 8, 1992, that Tougaloo College revised the job qualifications for Educational Talent Search Coordinator in July, 1992, to include the requirement of three years of supervisory experience in order to deny her the promotion. Plaintiff further alleges that this was done to retaliate against her because she earlier had filed a grievance in which she now claims to have opposed alleged sex discrimination.

There are two distinct clauses contained in the retaliation section of Title VII: The "participation" clause and the "opposition" clause. The distinction between employee activities protected by the participation clause and those protected by the opposition clause is important because federal courts have generally granted less protection for opposition than for participation in Title VII proceedings. *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1312 (6th Cir.1989). The present case involves only the opposition clause since the plaintiff did not instigate any proceeding based on her grievance and did not testify, assist, or participate in an investigation, proceeding or hearing under Title VII.

To establish a prima facie case under the "opposition" clause of Title VII, the plaintiff must establish: (1) a statutorily-protected expression; (2) an adverse employment action; and (3) a causal link between the protected expression and the adverse action. *See Payne v. McLemore's Wholesale & Retail Stores,* 654 F.2d 1130, 1136 (5th Cir.1981). Here, plaintiff has not met the first and third elements of a prima facie case of retaliation. Therefore, her complaint is subject to dismissal under Rule 56, Federal Rules of Civil Procedure.

### A. Plaintiff Did Not Engage In Conduct That Was In Opposition To An Unlawful Employment Practice.

The first element of the prima facie case a plaintiff must establish requires proof that she engaged in conduct that was in opposition to an unlawful employment practice of the defendant. For plaintiff here to prove that she engaged in statutorily protected expression, she must show that her grievance of March 29, 1991, was in opposition to conduct by Tougaloo College that was an unlawful employment practice under Title VII or conduct that she reasonably believed was unlawful under that statute. *Payne*, 654 F.2d at 1140. According to plaintiff's EEOC charge, her grievance was in opposition to alleged sex discrimination.

Plaintiff's grievance, however, does not express or suggest in any way that she believed that Tougaloo College's selection of a male for the position of Educational Talent Search Coordinator was the result of sex discrimination. Her grievance, attached as an exhibit to defendant's motion to dismiss, states in full:

### GRIEVANCE

This is to state my dissatisfaction with the manner in which Mrs. Belinda Lee has sought to unilaterally use her position and authority for mistreatment, and discriminatory actions towards me and the Talent Search Department.

Specifically, my grievance involves the following factors:

1. *Statements by Mrs. Lee relative to sick leave.*

Mrs. Lee made the statement that no Talent Search personnel could use sick leave for the remainder of the year.

2. *Talent Search vacancy was not posted in the manner that prior promotional opportunities were posted.*

3. *Intimidating comments by Mrs. Lee—"my credibility with the Vice President outweighs that of personnel under her supervision."*

4. *Overall evasiveness and insensitive behavior of Mrs. Lee towards me personally.*

Factor #1—I have not been counseled relative to sick leave usage and consider Mrs. Lee's remarks a personal attack of my character.

Especially, when Mrs. Lee affirmed that her comment was to be taken as stated when she was asked whether she indeed meant everyone in the Talent Search Department.

Mrs. Lee supervises three departments, yet her remarks were directed solely at the Talent Search Department.

Factor #2—Normally, promotional opportunities are posted openly on the employees bulletin board. The Talent Search Coordinator vacancy was posted on a board behind the secretary's door. Therefore, I became aware of this vacancy through word of mouth. After inquiring about the vacancy announcement, I was informed by the secretary that the vacancy was posted on a board behind her door.

Factor #3—Mrs. Lee's comments, I feel were meant to intimidate and discourage any employee from seeking assistance from her superiors less they would face reprisals since her credibility outweighed that of subordinates.

Factor #4—Mrs. Lee's overall insensitive behavior has been openly displayed towards me in the manner of arranging a meeting and failure to follow through.

Further, the Talent Search Coordinator was introduced at the National Convention by someone outside the office rather than Mrs. Lee. Until the convention, Talent Search employees were unaware a selection has been made.

Moreover, Mrs. Lee seeks to discourage any input or creative suggestions made by me personally to her. This is evident since several suggestions made by me were accepted by Mrs. Lee only after the past Talent Search Coordinator took credit for the suggestions. The Talent Search Coordinator knew that Mrs. Lee would reject any suggestions made by me.

Nowhere in the above grievance does plaintiff protest any form of sex discrimination. Her grievance does not even mention that a male was hired for this position. In-

stead, her grievance complains that the job vacancy was not properly noticed and that Mrs. Lee had treated her unfairly in certain respects. Plaintiff, then, has not met the first element—statutorily protected expression—of her prima facie case. Her grievance had nothing to do with alleged sex discrimination by Tougaloo College.

A case of similar facts and similar holding is *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304 (6th Cir.1989). In *Booker*, an African American supervisor was demoted after being warned that his managerial style was unacceptable to his employer. The supervisor filed suit, alleging that a letter he had written to the company's Human Resources Department had been a significant factor in his demotion. Although plaintiff's claim was based on a state statute prohibiting retaliatory conduct by an employer, the Sixth Circuit relied solely on Title VII precedent in determining whether the lower court had properly awarded summary judgment to the employer since both statutes offered similar, if not identical, protection.

Focusing first upon the letter itself, the Sixth Circuit concluded that there was no indication that the letter had been written in opposition to an unlawful employment practice. For the most part, said the Court, the letter consisted of plaintiff's attacks on his supervisor. Only two allegations in the letter even remotely suggested that the plaintiff may have been protesting race discrimination. First, plaintiff alleged in his letter that a co-employee, when referring to Blacks, had stated that "I don't know if these people can comprehend asset management." *Booker*, 879 F.2d at 1309. Second, plaintiff alleged that the complaints against him from his subordinates were the result of "ethnocism." *Id.* Nevertheless, the Sixth Circuit refused to regard either of these allegations as opposition to race discrimination. *Id.* at 1313. The Court characterized the first allegation as an accusation directed solely against a fellow employee. The Court held that there was no indication that plaintiff believed the

company was engaging in race discrimination. Next, the Court considered the allegation of "ethnocism" (for which there is no dictionary definition but which probably was meant for ethno-centrism) as a vague charge of discrimination which did not merit protection. *Id.* For these reasons, the Sixth Circuit determined that the letter did not fall under the protection of the opposition clause as a matter of law and affirmed the district court's summary judgment award in favor of the employer.

More recently, the district court in *EEOC v. MCI Telecommunications Corp.*, 820 F.Supp. 300 (S.D.Tex.1993), dismissed a retaliation claim because the evidence failed to establish that the employee had opposed an unlawful employment activity or an activity that the employee reasonably believed to be unlawful. In *MCI*, the employee mistakenly believed that her supervisor had planned to fire African Americans in order to make positions available for whites. Although the employee had expressed her concerns that such action would constitute race discrimination to an employee of the company's Human Resources Department, she also told the employee to keep their conversation in the strictest of confidence, which the employee did. Other than this conversation, the employee voiced no other objections about her supervisor's alleged attempt to change the racial composition of the office. Moreover, there was no evidence that the supervisor who later discharged her or that anyone else who was involved in the decision to discharge her knew that she had opposed any perceived unlawful practice. Thus, the Court held that the EEOC had failed to establish a prima facie case of retaliatory discharge.

The decisions in *Booker* and *MCI* are reflective of the juridical difficulties the plaintiff *sub judice* here faces. Plaintiff's grievance letter, even if liberally construed, does not support a reasonable inference that she believed that Tougaloo College was engaged in any allegedly impermissible employment practice.[3] Accordingly, plaintiff has failed to

---

3. Indeed, plaintiff did not file an EEOC charge alleging sex discrimination after Tougaloo College hired a male in February, 1991, for the position of Educational Talent Search Coordina-

tor. Moreover, plaintiff did not assert a claim for sex discrimination based on the hiring of a new Educational Talent Search Coordinator in 1992. As a matter of law, a sex discrimination

show that she opposed or sought to oppose an action illegal under Title VII—the first element of her prima facie case.

## B. There Is No Causal Connection Between Plaintiff's Alleged Activity In Opposition To Sex–Based Discrimination And Tougaloo College's Refusal To Promote Plaintiff.

■ Plaintiff also has failed to establish the third element of her prima facie case—a causal connection between her 1991 grievance and Tougaloo College's refusal to promote her to the position of Educational Talent Search Coordinator in July, 1992. This element requires plaintiff to show that because she filed her grievance, Tougaloo College changed the job qualifications for the position of Educational Talent Search Coordinator to exclude her from consideration for the promotion. *See Collins v. Baptist Memorial Geriatric Ctr.*, 937 F.2d 190, 193 (5th Cir.1991). The job qualifications were changed on July 17, 1992, after plaintiff and the other nine applicants already had been denied the promotion. Plaintiff has presented no proof that the change had any connection whatsoever with plaintiff's filing of the grievance.

Moreover, the change in the job qualifications by Tougaloo College occurred almost sixteen months after plaintiff had filed her grievance. This lapse of time suggests a lack of any causal connection between plaintiff's grievance filed in March, 1991, and the College's failure to promote her to Educational Talent Search Coordinator in July, 1992. *MCI Telecommunications*, 820 F.Supp. 300 (S.D.Tex.1992) (finding no causal connection where challenged conduct occurred six months before plaintiff's discharge); *Morgan v. Massachusetts Gen. Hosp.*, 712 F.Supp. 242, 255 (D.Mass.1989) (finding no causal connection where protected activity occurred more than nineteen months before discharge), *aff'd in part and vacated in part*, 901 F.2d 186 (1st Cir.1990).

claim based on the 1992 hiring would not have succeeded because an African American female, Gloria Blount, was chosen for that position. *See Comeaux v. Uniroyal Chem. Corp.*, 849 F.2d 191,

Of course, where defendant attacks a vital element of plaintiff's case in a Rule 56 motion, the plaintiff is obligated to respond with proof sufficient to establish a prima facie case. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552. Plaintiff here has failed to establish a prima facie case of retaliation because she has offered no sufficient proof to show any causal connection between her supposed opposition to sex discrimination and her denied promotion.

## VI. *PLAINTIFF HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED UNDER 42 U.S.C. § 1981.*

In her complaint filed in this action, plaintiff also alleges that Tougaloo College's "pattern and practice of retaliatory discrimination" violates 42 U.S.C. § 1981 (Supp. III 1991). Section 1981 provides in pertinent part:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens. . . .

(b) Definition

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

*Id.* This statute was originally enacted as Section 1 of the Civil Rights Act of 1866 pursuant to the congressional power to eradicate slavery provided by the Thirteenth Amendment which had been ratified in 1865. After ratification of the Fourteenth Amendment in 1868, the statute was reenacted as Section 16 of the Civil Rights Act of 1870 in order to remove any doubt of Congress' constitutional authority to pass such legislation. *See* Barbara L. Schlei & Paul Grossman,

193 (5th Cir.1988) (holding that plaintiff failed to prove prima facie case of discrimination because he failed to show he was replaced by someone outside protected group).

*Employment Discrimination Law* 668 (2d ed. 1983). The proscriptions of § 1981 do not apply here.

### A. Section 1981 Applies Solely To Racial Discrimination And Thus Is Not Applicable To The Present Case.

■ Plaintiff alleges that Tougaloo College changed the job qualifications for Educational Talent Search Coordinator, thereby effectively denying her the promotion, because earlier she had filed a grievance challenging the selection of a male, rather than a more qualified female, for the job. Plaintiff's claim is based on sex discrimination and is, therefore, not within the scope of 42 U.S.C. § 1981. *See Runyon v. McCrary,* 427 U.S. 160, 167, 96 S.Ct. 2586, 2593, 49 L.Ed.2d 415 (1976) ("42 U.S.C. § 1981 is no way addressed" to claims to religious or sex discrimination but instead is generally concerned with discrimination on the basis of race or color.); *Movement for Opportunity & Equality v. General Motors Corp.,* 622 F.2d 1235, 1278–79 (7th Cir.1980) (holding that section 1981 does not apply to sex discrimination claims); *Manzanares v. Safeway Stores, Inc.,* 593 F.2d 968, 971 (10th Cir.1979) (same); *League of Academic Women v. Regents of the Univ. of California,* 343 F.Supp. 636, 638–40 (N.D.Cal.1972) (rejecting argument that § 1981 protects women against sex-based discrimination).

Plaintiff makes no allegations of race discrimination in her complaint. Accordingly, plaintiff's section 1981 claim fails to state a claim upon which relief can be granted and should be dismissed.

### B. Plaintiff's Section 1981 Claim May Not Be Considered Apart From Her Claim Under Title VII.

■ In employment discrimination claims, section 1981 affords no greater protection than Title VII: the elements of substantive claims of employment discrimination are the same under both statutes. *Page v. United States Indus., Inc.,* 726 F.2d 1038, 1041 n. 2 (5th Cir.1984). Thus, even if plaintiff's allegations of discrimination are construed as somehow falling within the coverage of 42 U.S.C. § 1981, they nonetheless fail to state

a cause of action for the same reason plaintiff fails to establish a prima facie case of discrimination under Title VII.

■ The Fifth Circuit has stated in numerous employment discrimination cases that where the plaintiff has alleged violations of both Title VII and section 1981, the Court, as a rule, will consider an alternative remedy brought under section 1981 only if violation of that statute can be made out on grounds different from those available under Title VII. *See Rivera v. City of Wichita Falls,* 665 F.2d 531, 534 n. 4 (5th Cir.1982). Here, plaintiff has not alleged that such a distinction exists. Accordingly, her section 1981 claim, even if the statute applied to it, should be dismissed.

### VII. PLAINTIFF'S FOURTEENTH AMENDMENT CLAIM FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

■ Plaintiff's complaint seemingly alleges that Tougaloo College violated the Fourteenth Amendment of the United States Constitution by harassing plaintiff in retaliation for her having protested the alleged unlawful employment discrimination. It is well established that a cause of action under the Fourteenth Amendment requires the existence of state action.

> [N]o *State* shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any *State* deprive any person of life, liberty or property without due process of law; nor deny any person within its jurisdiction the equal protection of the laws.

U.S. Const., amend. XIV, § 1 (emphasis added).

The plaintiff, however, has failed to allege in her complaint that any action of Tougaloo College—a private Mississippi non-profit corporation, co-educational, liberal arts institution—was done under color of state law. In paragraph 6 of her complaint, plaintiff alleges that she "was hired in 1990 in the position of Counselor in the Talent Search Program which is funded by federal grants to Tougaloo College." This is the only allegation in plaintiff's complaint that could possibly be

construed as involving government action. Nevertheless, it does not allege state action.

That Tougaloo College may have received financial assistance from the federal government or, indeed, that the federal government may otherwise be heavily involved in the affairs of Tougaloo College is entirely not determinative in considering whether there is state action. *See Blackburn v. Fisk Univ.,* 443 F.2d 121, 123 (6th Cir.1971) (finding that evidence concerning participation of federal government in affairs of university was irrelevant as to question of whether there was sufficient state involvement); *Browns v. Mitchell,* 409 F.2d 593, 595 (10th Cir.1969) (ruling that Fourteenth Amendment is concerned only with state action and does not concern itself in any way with federal action). The First Circuit Court of Appeals in *Berrios v. Inter American Univ.,* 535 F.2d 1330, 1332 n. 5 (1st Cir.1976), specifically refused to consider financial assistance from the federal government to a private university as evidence of state action. Because plaintiff has failed to allege state action in her complaint, her claim under the Fourteenth Amendment should be dismissed.

## VIII. *PLAINTIFF'S AFTERTHOUGHT CLAIMS MUST ALSO BE DISMISSED.*

█ In her legal brief in opposition to defendant's motion, plaintiff argues that the College "has released false and damaging information when plaintiff has attempted to seek other employment." Pl. Br. at 3. However, this assertion stands naked. Plaintiff does not support the statement with any evidence by affidavit, deposition or otherwise. The court is left in the dark as to the specific wording of the alleged statement, to whom it was supposedly said, or what employment plaintiff allegedly was seeking. Plaintiff never raised this point in her EEOC charge, nor has it been discussed in any of her grievances filed at the College. *See Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 466 (5th Cir.1970) (holding that the scope of a plaintiff's Title VII claim is limited to the factual allegations of her underlying EEOC charge). Further, the court finds that this charge is not reasonably related to her claim based on her 1991 grievance or to her claim based on the College's later refusal to promote her. This court concludes, therefore, that it lacks jurisdiction to consider the claim. *Green v. Los Angeles County Superintendent of Schools,* 883 F.2d 1472, 1475–76 (9th Cir.1989) (finding that a claim for disseminating poor recommendations after EEOC charge filed not reasonably related to charge); *Rogers v. Addison–Wesley Publishing Co., Inc.,* 99 F.R.D. 85, 88 (N.D.Ga.1983) (granting summary judgment on claims not raised before EEOC); *Foit v. Suburban Bancorp,* 549 F.Supp. 264, 266–67 (D.Md. 1982); *Ferguson v. Mobil Oil Corp.,* 443 F.Supp. 1334, 1336–38 (S.D.N.Y.1978), *aff'd,* 607 F.2d 995 (2d Cir.1979) (finding post-discharge "blacklisting" claim not reasonably related to EEOC charge).

Similarly, in her response to defendant's motion, plaintiff now also states for the first time that the College tried "to force her to resign" and "created a hostile working environment all because of grievances and EEOC complaints." This court lacks jurisdiction over these claims because of the above-provided reasons: they were not raised in her EEOC charges or her complaint. Moreover, as with her contentions of defamation, plaintiff has failed to clothe these bare allegations with any evidence sufficient to establish a prima facie case. These unsupported allegations are insufficient to withstand this motion to dismiss or, in the alternative, motion for summary judgment. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2552.

## IX. CONCLUSION

This court is persuaded by the above analysis of the law and the undisputed facts to award summary judgment to the defendant. Plaintiff herein has failed to meet the standard enunciated in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and show issues in equipoise appropriate for a trier of fact to resolve. Accordingly, this court dismisses all of plaintiff's claims and dismisses this lawsuit with prejudice. A separate judgment will be entered in accordance with the local rules.

SO ORDERED AND ADJUDGED.