Patty CALLAHAN Plaintiff

v.

BANCORPSOUTH INSURANCE SER-
VICES OF MISSISSIPPI, INC. (Stew-
art Sneed Hewes Division) f/k/a Stew-
art Sneed Hewes, Inc. Defendant

No. CIV.A. 1:01–CV–62(BR).

United States District Court,
S.D. Mississippi,
Southern Division.

Feb. 28, 2002.

Jack C. Pickett, Kitchens & Ellis, Pascagoula, MS, Wynn E. Clark, Gulfport, MS, for Plaintiff.

Paul O. Miller, III, Phelps Dunbar, Jackson, MS, Defendant.

## MEMORANDUM OPINION AND ORDER

BRAMLETTE, District Judge.

This cause is before the Court on the defendant BancorpSouth Insurance Services of Mississippi, Inc. (Stewart Sneed Hewes Division), f/k/a Stewart Sneed Hewes, Inc. ("BancorpSouth")'s motion for summary judgment (**docket entry 22**). Having carefully considered the motion, the response, the memoranda and all supporting documents, as well as the applicable law, and being fully advised in the premises, the Court finds as follows:

The plaintiff alleges that BancorpSouth discharged her from employment on November 4, 1999, in retaliation for her engaging in activity protected by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a). Specifically, the plaintiff alleges that she was discharged because she complained about gender discrimination against her on November 3, 1999. The plaintiff also alleges that she was not compensated for overtime work in violation of the Fair Labor Standards Act (FLSA). In addition to her federal claims, the plaintiff includes a breach of contract claim against her employer for failure to provide 30 days written notice of her termination, and failure to pay vacation pay and bonuses.[1] On April 13, 2000, the plaintiff filed an EEOC charge, and on January 21, 2001, she filed suit in the Circuit Court of Harrison County, First Judicial District. The case was removed to this Court by the defendant on February 15, 2001. The defendant now moves for summary judgment.

---

1. The plaintiff's complaint contains other claims as well, but these have been voluntarily abandoned.

The Supreme Court has held that Rule 56(c) mandates summary judgment in any case where a party fails to establish the existence of an element essential to the case and on which that party has the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2552. In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Court stated:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.... As to materiality, the substantive law will identify which facts are material ....

*Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2510 (emphasis in original). When the moving party has carried the Rule 56(c) burden, the opposing party must present more than a metaphysical doubt about the material facts in order to preclude the grant of summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Indeed, once the defendant has moved for summary judgement, the non-moving party is required to respond with proof of a *prima facie* case, sufficient for a jury to enter a verdict in its favor. *Washington v. Armstrong World Indus.,* 839 F.2d 1121, 1122–23 (5th Cir. 1988) (citing *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511). A claim that further discovery or a trial might reveal facts which the plaintiff is currently unaware of is insufficient to defeat the motion. *Woods v. Federal Home Loan Bank Bd.,* 826 F.2d 1400, 1414–15 (5th Cir.1987).

The essential elements of a Title VII employment discrimination case, in the absence of direct evidence of discrimination, are set forth in *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In a retaliation claim, the plaintiff makes out a prima facie case if she can establish "(1) that there was statutorily protected participation [in EEO activity], (2) that an adverse employment action occurred, and (3) that there was a causal link between the participation and the adverse employment action." *Whatley v. Metropolitan Atlanta Rapid Transit,* 632 F.2d 1325, 1328 (5th Cir.1980). If a prima facie case is established, the employer bears the burden of articulating a legitimate, nondiscriminatory business reason for its action, which the plaintiff has the burden of proving is pretextual. *See De Anda v. St. Joseph Hospital,* 671 F.2d 850, 856 (5th Cir.1982); *E.E.O.C. v. MCI Telecommunications Corp.,* 820 F.Supp. 300, 309 (S.D.Tex.1993).

The FLSA generally requires, for employees covered under its provisions, overtime compensation of one and one-half times the regular rate of pay for time worked in excess of forty hours per workweek. *See* 29 U.S.C. § 207. However, the FLSA exempts from its overtime requirements any salaried employee who works in a bona fide executive, administrative or professional capacity. 29 U.S.C. § 213(a)(1); *Smith v. City of Jackson,* 954 F.2d 296 (5th Cir.1992).

Summary judgment is available in employment discrimination cases, *see, e.g., Slaughter v. Allstate Ins. Co.,* 803 F.2d 857, 861 (5th Cir.1986) (case brought under Age Discrimination in Employment Act), and is appropriate where "critical evidence

is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, or where it is so overwhelming that it mandates judgment in favor of the nonmovant." *Armstrong v. City of Dallas,* 997 F.2d 62, 67 (5th Cir. 1993) (Title VII retaliation case). The Fifth Circuit has held that summary judgment is appropriate where the plaintiff fails to show a genuine issue of fact on the pretext issue. *See, e.g., Amburgey v. Corhart Refractories Corp., Inc.,* 936 F.2d 805, 813 (5th Cir.1991); *Hanchey v. Energas Co.,* 925 F.2d 96 (5th Cir.1990). Summary judgment is also available in cases brought under the FLSA, *Vela v. City of Houston,* 276 F.3d 659 (5th Cir.2001); *Lott v. Howard Wilson Chrysler–Plymouth, Inc.,* 203 F.3d 326 (5th Cir.2000), and is appropriate where the plaintiff fails to show a genuine issue of fact on the exemption issue. *See, e.g., Triplett v. Engineering Development Group, Inc.,* 1998 WL 164851 (E.D.La. April 7, 1998).

The plaintiff's version of the facts is taken from her brief in response to the motion for summary judgment. The plaintiff, a female, was first employed with Stewart Sneed Hughes ("SSH") in 1993 as a secretary to President John Sneed, and Vice–President Wayne Tisdale. The plaintiff was an hourly employee and was paid overtime. On January 9, 1995, the plaintiff became Sales and Public Relations Coordinator with a salary of $25,000 a year. A majority of her duties were with Thompson Plan Administrators ("TPA"), a division of SSH that was the administrator of Associated General Contractor's ("AGC") Workers' Compensation Fund. This was TPA's only business. The plaintiff was involved in coordinating activities of TPA and the fund under Tisdale's direction. The plaintiff was a salaried employee from this point on, and no longer received overtime pay although she re-

quested to be put back on an hourly wage numerous times.

On October 1, 1997, the plaintiff was placed on a direct sales producer contract. However, the plaintiff's salary of $30,000 and duties with respect to TPA and the AGC Workers' Compensation Fund remained the same. In February of 1998, the plaintiff's job as a producer was eliminated. In the spring of 1998, the plaintiff resigned her employment with SSH because she was in limbo as her sales coordinator and producer jobs had been eliminated. The plaintiff agreed to stay on until July to help with the renewal of the AGC fund.

On August 1, 1998, Tisdale named the plaintiff Manager of TPA with a salary of $38,000. The plaintiff considered this to be an acknowledgment of what she had been doing. Tisdale, by letter dated September 3, 1998, informed the plaintiff of her job description as the manager of TPA. The plaintiff's duties and responsibilities included managing TPA under his direction. The fund was actually managed by the Board of Directors of AGC. According to the plaintiff, she had been performing basically the same duties since she was secretary.

On June 30, 1999, SSH merged with BancorpSouth, and the plaintiff signed a new employment agreement, with her salary and benefits remaining the same.

On November 3, 1999, the plaintiff met with Tisdale who asked her what her plans were for continuing with SSH. The plaintiff stated that "she had no intention of leaving, and was going to take one day at a time and see what happens." (Plaintiff's Deposition, at 89). The plaintiff also discussed with Tisdale his denial of an incentive bonus she had been promised, and requested as she had in the past to be put back on an hourly wage so as to compensate her for the many hours of overtime

she had been putting in. She also complained that she had been treated unfairly. The plaintiff also asked Tisdale "if he had ever had this type of conversation with any of the guys and told him that if she were a guy, there would be a secretary sitting out there and we wouldn't be having this conversation." Tisdale responded by saying "It sounds like you're going to sue me," and left the meeting angry. (Plaintiff's Deposition, at 92).

On November 4, 1999, the plaintiff was called into John Sneed's office. Sneed, president of SSH, had Tisdale in the office with him. Sneed told the plaintiff that she had maxed out on the value of her position, and that any additional compensation goals she had would not be met. Sneed told the plaintiff she was to pack her belongings and leave, but that she would be paid through the end of the year and would receive whatever bonuses she was entitled to. Neither Sneed nor Tisdale ever mentioned anything to the plaintiff about her refusal to commit to SSH at this meeting. The next day, the plaintiff returned and cleaned out her desk. The defendant chose to treat the plaintiff's immediate termination as a leave of absence, and the plaintiff received her salary through the end of 1999, but she did not receive her 5% profit sharing bonus, her 10% incentive bonus or vacation pay.

### Retaliation Claim

The plaintiff claims that she opposed an unlawful employment practice, and that her employer took an adverse employment action against her because of her protected activity. As stated above, in order to establish a *prima facie* case of retaliation under Title VII, the plaintiff must establish "(1) that there was statutorily protected participation [in EEO activity], (2) that an adverse employment action occurred, and (3) that there was a causal link between the participation and the adverse employment action." *Whatley v. Metropolitan Atlanta Rapid Transit,* 632 F.2d 1325, 1328 (5th Cir.1980). If a prima facie case is established, the employer bears only the burden of articulating a legitimate, nondiscriminatory business reason for its action, which the plaintiff has the burden of proving is pretextual. *See De Anda v. St. Joseph Hospital,* 671 F.2d 850, 856 (5th Cir.1982); *E.E.O.C. v. MCI Telecommunications Corp.,* 820 F.Supp. 300, 309 (S.D.Tex.1993). Retaliation must be the determining factor in the defendant's decision to take adverse employment action against the plaintiff. *Los Angeles Department of Water v. Manhart,* 435 U.S. 702, 711, 98 S.Ct. 1370, 1377, 55 L.Ed.2d 657 (1978). The discrimination and retaliation laws were not intended to be vehicles for judicial second guessing of employment decisions, nor were they intended to transform the courts into personnel managers. *Bienkowski v. American Airlines, Inc.,* 851 F.2d 1503, 1507–08 (5th Cir.1988).

Title VII prohibits retaliation in either of two instances: (1) where the employee has opposed any unlawful employment practice ("opposition clause"); or (2) where the employee has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing ("participation clause"). 42 U.S.C. § 2000e–3(a). Since Callahan did not instigate any proceedings based on her grievance and did not testify, assist, or participate in an investigation, her allegations fall under the opposition clause. *Aldridge v. Tougaloo College,* 847 F.Supp. 480, 483 (S.D.Miss.1994). Although the elements of a retaliation claim under both clauses are the same, the courts have generally granted less protection for activity falling under the opposition clause. *Id.*

The plaintiff alleges that at a meeting with Wayne Tisdale on November 3, 1999,

she asked him "if he had ever had this type of conversation with any of the guys and told him that if she were a guy, there would be a secretary sitting out there and we wouldn't be having this conversation." Tisdale allegedly responded by saying "It sounds like you're going to sue me," and left the meeting angry. (Plaintiff's Deposition, at 92). At the meeting, the plaintiff and Tisdale had discussed the plaintiff's plans for continuing in her present employment. The plaintiff stated that "she had no intention of leaving, and was going to take one day at a time and see what happens." (Plaintiff's Deposition, at 89). The plaintiff also discussed with Tisdale "his denial of an incentive bonus she had been promised, and requested as she had in the past to be put back on an hourly wage so as to compensate her for the many hours of overtime she had been putting in. She also complained that she had been treated unfairly." (Plaintiff's Brief, at 3).

■ The Court has already established that Callahan did not engage in protected behavior under the participation clause. The threshold question, then, is whether Callahan engaged in protected behavior under the opposition clause. The prohibition of retaliation protects employees who use informal methods to voice their complaints, as well as those who file formal charges.

> Such informal means include "making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges." [*Sumner v. United State Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990).] However, an employee's statement cannot be deemed to be in opposition to an unlawful employment practice unless it refers to and opposes a specific

practice of the employer. *See Dupont–Lauren v. Schneider, Inc.*, 994 F.Supp. 802, 823 (S.D.Tex.1998) (holding employee's statement did not constitute opposition where she made vague comments that failed to apprize employer of any particular practices she viewed as discriminatory or unlawful, nor did she accuse any particular co-worker or supervisor of discrimination). At the . very least, if the statement does not mention a specific act of discrimination, the employer must be able to discern from the context of the statement that the employee opposes an allegedly unlawful employment practice. *See EEOC v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1012–13 (9th Cir.1983) (finding employee engaged in protected activity where he issued a letter accusing his employer of "racism" and "discrimination" because the allegedly unlawful employment practices protested by the employee could be discerned from the context of the letter).

*Erlinger v. Denamerica Corp.*, 2000 WL 537346 *4 (N.D.Tex. May 3, 2000).

■ In the instant case, the plaintiff has failed to show how she "opposed" a violation of Title VII. Although express complaints to supervisors about perceived discriminatory practices constitute protected activity,

> the "wide range" of protected activity clearly does not include those situations where the opposition relates not to unlawful employment practices but to a personal grievance .... Employees often do not speak with the clarity or precision of lawyers. At the same time, however, employers need not approach every employee's comment as a riddle, puzzling over the possibility that it contains a cloaked complaint of discrimination. But the thrust of inartful, subtle, or circumspect remarks nevertheless may be perfectly clear to the employer,

and the Court discerns no evidence that Congress intended to protect only the impudent or articulate. The relevant question, then, is not whether a formal accusation of discrimination is made but whether the employee's communications to the employer sufficiently convey the employee's reasonable concerns that the employer has acted or is acting in an unlawful discriminatory manner.

*Garcia–Paz v. Swift Textiles, Inc.,* 873 F.Supp. 547, 559–60 (D.Kan.1995) (citations and parentheticals omitted).

According to the plaintiff, at the November 3, 1999, meeting with Tisdale she complained to him about his denial of an incentive bonus she had been promised. She also requested to be put back on an hourly wage so that she would be eligible for overtime compensation. The plaintiff also complained that she had been "treated unfairly." Nowhere in her deposition testimony or brief does she allege that she complained specifically about gender-based discrimination, except for the cryptic remark, "I said if I had been a guy that there would be a secretary sitting out there and we wouldn't be having this conversation."

The plaintiff does not allege that in her remarks to Tisdale she attributed his or anyone else's decisions regarding bonuses or overtime to gender-based discrimination, nor does she allege that male employees were treated more favorably in this regard. Her remark concerning the secretary seems to imply that she was not given a secretary because she was female. However, it is undisputed that in proposing the creation of her position to her employer in July of 1998, Callahan requested clerical help rather than a secretary, and that she was in the process of training her clerical help at the time of her meeting with Tisdale. (Plaintiff's Deposition, at 92, and Exhibit 9 thereto).

The Court concludes that the plaintiff's complaint to her employer was not a statutorily protected expression sufficient to support her Title VII retaliation claim. In *Aldridge,* the court held:

Nowhere in the above grievance does plaintiff protest any form of sex discrimination. Her grievance does not even mention that a male was hired for this position. Instead, her grievance complains that the job vacancy was not properly noticed and that Mrs. Lee had treated her unfairly in certain respects. Plaintiff, then, has not met the first element—statutorily protected expression—of her prima facie case. Her grievance had nothing to do with alleged sex discrimination by Tougaloo College.

847 F.Supp. at 484–85; *see also Primes v. Reno,* 999 F.Supp. 1007, 1016 (N.D.Ohio 1998) (vague suggestions of racism as one possible explanation of what plaintiff perceived as a poor evaluation was insufficient to constitute "opposition" under Title VII and could not form basis for retaliation claim); *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1313 (6th Cir. 1989) (employee's allegation in letter that charges against him were a result of "ethnocism" and that supervisor may be a racist was "vague charge of discrimination" insufficient to constitute "opposition" under state statute patterned after Title VII).

Nor does the Court find that a reasonable person in Tisdale's position would have understood that Callahan was threatening a gender-based discrimination lawsuit. The conversation, as related by the plaintiff, contains insufficient indicia that she was protesting unlawful employment practices under Title VII. The only mention of a lawsuit is alleged to have been made by Tisdale, not by the plaintiff herself. The remark logically could have been in reference to a lawsuit for breach of

employment contract rather than one for discrimination under Title VII. As the *Booker* court explained:

An employee may not invoke the protections of the Act by making a vague charge of discrimination. Otherwise, every adverse employment decision by an employer would be subject to challenge under either state or federal civil rights legislation simply by an employee inserting a charge of "discrimination." In our view, such would constitute an intolerable intrusion into the workplace.

879 F.2d at 1313. The Court finds that the plaintiff has failed to present a genuine issue of material fact regarding a critical element of her retaliation claim. She has not shown statutorily protected conduct that would entitle her to Title VII protection from retaliation. Thus, she cannot establish a prima facie case, and the defendant is entitled to summary judgment.

### Overtime Claim

■ As noted above, the FLSA generally requires overtime compensation of one and one-half times the regular rate of pay for time worked in excess of forty hours per workweek for certain employees. *See* 29 U.S.C. § 207. Under the FLSA's enforcement provisions, employers violating the Act may be required to pay uncompensated overtime, together with civil penalties and liquidated damages. *See* 29 U.S.C. § 216. However, the minimum wage and maximum hour requirements of 29 U.S.C. §§ 206 and 207 do not apply to "any employee employed in a bona fide executive, administrative, or professional capacity ... or in the capacity of an outside salesman." 29 U.S.C. § 213.

The plaintiff filed her complaint on January 10, 2001. Absent a wilful violation, the plaintiff's overtime claims are limited to the period beginning January 10, 1999 (two years before the filing of the complaint), and ending November 4, 1999 (the plaintiff's last day of work). The plaintiff has not shown a wilful violation by the defendant. From August 1, 1998, until November 4, 1999, the plaintiff was manager · of TPA, the entity responsible for administering operations of the Workers' Compensation Fund, with a salary of $38,000. Her duties were set forth in a letter to the plaintiff from Tisdale dated September 3, 1998, entitled "Job Description," which was attached to the plaintiff's employment agreement. The plaintiff's duties were described as follows:

RESPONSIBILITIES: To manage Thompson Plan Administrators which currently only performs work for the AGC Workers Compensation Fund, Inc. dba CompTrust AGC. You will be responsible for all aspects of the operation of this program to include marketing, administration of TPA, billing & collecting etc. You will report to me, I will assist you in management of the account through the Board of Directors. I will coordinate with SRS on the placement of the excess reinsurance and any other matters that are appropriate.

You will perform all normal underwriting functions, referring to Chuck McKinley only matters of exception. Chuck will remain on the investment committee of the Fund, but all other administrative duties will primarily be your responsibility. Chuck will back you up and assist in the event you need help.

Michelle will report directly to you, and you will jointly prepare her annual review with Chuck.

(Exhibit 11 to Plaintiff's Deposition).

The plaintiff stated that as manager of TPA, her duties were to prepare all the reports to Chuck McKinley and Wayne Tisdale, and assure the efficient operation of the fund and activities of the fund. (Plaintiff's Deposition, at 29). Part of the

plaintiff's job was to market the AGC fund to sales agents located at the forty-three insurance companies in the State of Mississippi. (*Id.* at 31). The plaintiff attended state agent functions to promote the fund. (*Id.*). The plaintiff also marketed the fund to·contractors who might become interested in becoming members of the fund, and to sales agents who might be interested in selling the coverage. (*Id.*). The majority of the time, this was done from the plaintiff's office; however, at times she had to go out to do marketing activities. (*Id.*). As TPA manager, the plaintiff performed additional duties, which she had previously performed while she was a Sales and Public Relations director and producer, including:

General Sales

- Development of prospective programs and prospects for target programs
- Assisting Producers in sales support activities
- Coordination of seminars and meetings
- Any activity that supports or enhances the sales function in the Stewart Sneed Hewes organization
- Assisting SSH officers and managers in insurance company relations

AGC Workers' Compensation Fund:
Coordination of all arrangements on board meetings, annual meetings, conventions, seminars, receptions and workshops
AGC WCF Safety Committee; coordination of all Safety Committee activities
Convention/Annual Meeting

- Coordination of activities at the annual convention
- Assisting Wayne, Chuck, Opal & Cathy on annual report Marketing
- Newsletter
- Monthly Bulletins
- Direct Mail marketing to agents and prospects

- Representing TPA as needed at meetings on behalf of the AGC WCF

Public Relations

- Assisting SSH officers and managers in promoting the agency to the public, customers and prospects in the most favorable light possible.

(Plaintiff's Deposition, at 32–33, and Exhibit 3 thereto). The plaintiff also trained and supervised clerical employees Michelle Burger and her replacement, Megan Chambers. (*Id.* at 36).

In *Lott v. Howard Wilson Chrysler–Plymouth, Inc.*, 203 F.3d 326 (5th Cir. 2000), the Fifth Circuit Court of Appeals held:

An administrative employee is an employee whose primary duty consists of office or nonmanual work directly related to management policies or general business operations for the employer or the employer's customers, which includes work requiring the exercise of discretion and independent judgment. 29 C.F.R. §§ 541.2(e)(2), 541.2(e)(1).

*Id.* at 331. Elsewhere, the Fifth Circuit has defined the term "primary duty" to mean that over 50% of the employee's time must be spent performing exempt work. *Paul v. Petroleum Equipment Tools Co.*, 708 F.2d 168, 170 (5th Cir.1983) (*citing* 29 C.F.R. § 541.103). The court in *Lott* found that the plaintiff was exempt as an administrative employee where her "primary responsibilities consisted of office work directly related to the general business operations of [her employer]." *Lott*, 203 F.3d at 331. Lott's duties were comparable to those of the plaintiff in this case:

Lott was responsible for the preparation of all payrolls, monthly sales tax returns, monthly workers' compensation returns, monthly state withholding returns, quarterly payroll tax returns, quarterly state

and federal tax estimates, state unemployment returns, the reconciliation of several bank statements and month-end financial statements. Ms. Lott exercised discretion and independent judgment with regard to when such returns, reports and other statements were generated.

*Id.*

From an examination of the plaintiff's primary duties, the Court finds that Callahan was engaged in office work directly related to the general business operations of her employer, requiring the exercise of discretion and independent judgment in the management of the TPA fund, including marketing, administration, underwriting, billing and collecting; thus, she was an exempt employee pursuant to the administrative exemption of the FLSA.

The plaintiff argues that she was not an exempt administrative employee because she was under the direction and supervision of Wayne Tisdale and/or Chuck McKinley, and was not allowed to exercise discretion or independent judgment. She also asserts that her duties as manager of TPA were the same duties she had performed while she held the title of Sales and Public Relations Coordinator from January 1995 to October 1997. She also asserts that she had assisted in performing some of the same duties as Wayne Tisdale's secretary, a non-exempt hourly employee position she held from April 1993 to January 1995.

The plaintiff submits her own affidavit, and that of Sheryl Doyle, a former secretary to Sneed and Tisdale, to the effect that she did not have independent authority to use discretion or independent judgment. However, these conclusory allegations are not supported by the record. As the Seventh Circuit Court of Appeals held in *Haywood v. North American Van Lines, Inc.*, 121 F.3d 1066 (7th Cir.1997):

The fact that [the plaintiff] had supervisors who reviewed her work does not defeat her exempt status under the FLSA. Section 541.207(e) provides:

> The term "discretion and independent judgment" as used in the regulations ... does not necessarily imply that the decisions made by the employee must have a finality that goes with unlimited authority and a complete absence of review. The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than he actual taking of action. 29 C.F.R. § 541.207(e)(1).

*Id.* at 1073. Section 541.207(2) additionally provides:

> The regulations ... contemplate the kind of discretion and independent judgment exercised by an administrative assistant to an executive, who without specific instructions or prescribed procedures, arranges interviews and meetings, and handles callers and meetings himself where the executive's personal attention is not required.

29 C.F.R. § 541.207(2).

In fact, at her deposition, the plaintiff stated:

[by plaintiff]

... with my responsibilities in the AGC, I not only did all the clerical aspects, but I assumed the responsibilities that Wayne and Chuck had previously, a majority of them.

[by Mr. Miller]

So you're comparing—for your equal pay claim, you're comparing yourself to Wayne Tisdale and Chuck McKinley with respect to the time period in 1998 that you were performing the sales/public relations/TPA manager duties?

[by plaintiff]

I'm relating it to—none of us sold the fund. Wayne did because he was the producer for Stewart–Sneed–Hewes and he had clients that were in the fund. I promoted the fund, and there was a difference. It was more of a marketing promotion of the fund.

(Plaintiff's Deposition, at 131). The Court finds that the plaintiff's argument that she did not exercise the kind of discretion and independent judgment required by the FLSA is without merit. Accordingly, the defendant is entitled to summary judgment on the overtime claim.

■ This case has been before this Court by virtue of the Court's federal question jurisdiction over the plaintiff's Title VII and FLSA claims. The plaintiff is no longer asserting any other federal claims. This leaves only the plaintiff's state law claims for breach of contract. In deciding whether to exercise supplemental jurisdiction over the plaintiffs' state law claims, the Court is guided by 28 U.S.C. § 1367 which gives federal courts jurisdiction over state law claims in limited circumstances:

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). Section 1367(c)(3) provides that a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... the district court has dismissed all claims over which it has original jurisdiction." As the commentary to section 1367(c)(3) explains:

> the idea here is that once the crutch is removed—the claim that supports the supplemental jurisdiction of the other claim or claims—the other should not remain for adjudication ....

28 U.S.C.A. § 1367 Practice Commentary. District courts enjoy wide discretion in determining whether to retain supplemental jurisdiction over state claims once all federal claims are dismissed. *Noble v. White,* 996 F.2d 797, 799 (5th Cir.1993). In fact, the Fifth Circuit's "general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed." *Parker & Parsley Petroleum v. Dresser Industries,* 972 F.2d 580, 585 (5th Cir.1992), citing *Wong v. Stripling,* 881 F.2d 200, 204 (5th Cir.1989); *see also Rhyne v. Henderson County,* 973 F.2d 386, 395 (5th Cir.1992).

The Court is guided by the considerations of "judicial economy, convenience, fairness and comity." *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). In *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Supreme Court emphasized that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of the applicable law."

■ Because there exists no independent basis of federal jurisdiction, and in the interest of comity, judicial economy, convenience, and fairness to the litigants, the Court exercises its discretion pursuant to 28 U.S.C. § 1367 and declines to exercise supplemental jurisdiction over the plaintiffs' state law claims. The federal claims will therefore be dismissed with prejudice, and this action shall be remanded to the state court. Accordingly,

IT IS HEREBY ORDERED that the defendants' motion for summary judgment (**docket entry 22**) is GRANTED as to the plaintiff's federal claims only. The re-

mainder of this action shall be remanded to the Circuit Court of Harrison County, First Judicial District.