# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00608-CV

**Cathren Kennedy, Appellant**

**v.**

**Texas Department of Protective and Regulatory Services, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
## NO. GN302604, HONORABLE CHARLES F. CAMPBELL, JR., JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Cathren Kennedy retired as an employee of appellee Texas Department of Protective and Regulatory Services (the Department) and applied to be rehired to her position. The Department instead hired one of Kennedy's co-workers. Kennedy is Caucasian, while the co-worker is Hispanic. Kennedy filed a national origin discrimination claim with the federal Equal Employment Opportunity Commission (EEOC). Thereafter, Kennedy applied for another position with the Department; she did not receive an interview and was not hired. She then filed suit in district court, claiming national origin discrimination and retaliation. *See* Tex. Lab. Code Ann. §§ 21.051, .055 (West 1996). The district court granted traditional summary judgment on the

national origin discrimination claim and no-evidence summary judgment on the retaliation claim, both in favor of the Department. We will affirm the judgment of the district court.

**BACKGROUND**

Kennedy worked for the Department for over twenty-eight years. During that time, she had been a licensing representative and a licensing supervisor, she had monitored residential facilities and child placement agencies, and she had been a program specialist in the Department's licensing division. On May 31, 2002, she retired from her position as a "Functional Analyst III" ("Position I"), a position she had held for nine months that dealt with the Department's new automated documentation system. The Department then posted Position I, and, on June 14, Kennedy applied to be rehired to it. According to Kennedy's pleadings, the Department, like other state agencies at the time, permitted certain employees to retire, then rehired them after waiting thirty days, enabling the employees to obtain certain pension benefits. After her retirement, Kennedy voluntarily continued working at her position on an unpaid basis during the ensuing thirty days.

The Department chose five applicants to interview for Position I, including Kennedy and Yolanda Hernandez. According to Kennedy, she was initially interviewed on June 5 or 6 by one Department employee, Scott Silverthorne. However, she was later notified that the Department needed to conduct another interview because the interview with Silverthorne had occurred before the Department had posted Position I and before Kennedy had applied for it.

The Department created a panel of four employees to conduct interviews, and two of those employees, Keith Elliot and Pat Smith, interviewed Kennedy. Both Kennedy and Hernandez had initially qualified for interviews based on background and qualifications—education, training,

2

and previous work experience. The interview notes indicate that the interviewers felt that Hernandez performed well during her interview. However, they rated Kennedy's interview performance as "poor" and remarked that she appeared unprepared. The record contains minimal notes taken by the interviewers. The Department ultimately hired Hernandez over Kennedy for Position I.[1]

On August 27, Kennedy filed a national origin discrimination complaint with the EEOC concerning the Department's hiring decision for Position I. On August 30, the EEOC notified the Department of Kennedy's complaint and suggested mediation. Pedro Lopez, an employee relations specialist with the Department, drafted an internal memorandum concerning the complaint on September 23,[2] suggesting that the Department reject mediation. On September 26, the Department's director of human resources, Frank Pearce, responded by letter to the EEOC, denying Kennedy's allegations.

On October 4, Kennedy learned that another functional analyst position ("Position II") had become open; she submitted her application that day. On October 9, she confirmed that the Department's human resources department had received the application. Kennedy was never interviewed for Position II. On October 23, Kennedy learned that the Department had filled Position II with another person and without interviewing her.

---

[1] The record does not indicate which panel members interviewed Hernandez.

[2] The memorandum was sent to the Department's deputy director of legal services, the Department's human resources attorney, and Frank Pearce, the Department's director of human resources.

Kennedy filed suit against the Department on July 24, 2003. She first alleged national origin discrimination for the Department's hiring of Hernandez over her for Position I. *See* Tex. Lab. Code Ann. § 21.051.[3] Second, she claimed the Department engaged in unlawful retaliation when it did not interview or hire her for Position II. *See id*. § 21.055. In response, the Department filed a traditional motion for summary judgment for the national origin discrimination claim, claiming a legitimate non-discriminatory reason for its selection of Hernandez and lack of causation. *See* Tex. R. Civ. P. 166a(c). At the same time, it moved for no-evidence summary judgment for the retaliation claim, asserting that Kennedy had no evidence that decisionmakers in the Department were aware of her EEOC charge of discrimination. *See* Tex. R. Civ. P. 166a(i). The district court granted the Department's motions.[4] This appeal followed.

## DISCUSSION

Kennedy brings two issues on appeal, arguing that the trial court erred in granting both motions for summary judgment. We will address each issue in turn.

**National origin discrimination claim**

In her first issue, Kennedy argues that the district court erred in granting traditional summary judgment against her on her national origin discrimination claim. In particular, she claims

---

[3] She also brought this claim under section 106.001(a) of the civil practices and remedies code, but that claim was dismissed on a plea to the jurisdiction.

[4] We will detail the relevant summary-judgment evidence when we discuss Kennedy's appellate issues.

she "was the only candidate qualified for" Position I. She adds that the Department awarded Position I to Hernandez because, Kennedy alleges, Hernandez had threatened to sue the Department in the past for national origin discrimination.

Because the propriety of a summary judgment is a question of law, we review the district court's decision *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). The standards for reviewing traditional summary judgments are well established: (1) the movant has the burden of showing that no genuine issue of material fact exists and entitlement to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged, and any doubts resolved, in favor of the nonmovant. Tex. R. Civ. P. 166a(c); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 24 (Tex. 2000) (citing *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985)). We affirm if summary judgment is warranted on any ground asserted in the trial court. Tex. R. Civ. P. 166a(c); *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004). A defendant, when moving for summary judgment, need disprove only one essential element of the opponent's cause of action to prevail. *IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). However, the defendant must support its motion with proper summary-judgment evidence. Tex. R. Civ. P. 166a(c). Only if the defendant meets its burden does the burden shift to the plaintiff, as the nonmovant, to establish the existence of a genuine issue of material fact. *Elliott-Williams Co. v. Diaz*, 9 S.W.3d 801, 803 (Tex. 1999).

One of the purposes of the Texas Commission on Human Rights Act (TCHRA) is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments." Tex. Lab. Code Ann. § 21.001(1) (West 1996); *see id*. §§ 21.001-.306 (West 1996 & Supp. 2004-05). Therefore, analogous federal statutes and the cases interpreting them guide our reading of the TCHRA. *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001) (citing *NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999)).

Federal courts recognize two types of Title VII employment discrimination cases, each requiring different elements of proof. *Id*. One type of case is the "mixed-motive" case, in which the plaintiff has direct evidence that discriminatory animus factored into the employment decision. *Id*. This direct evidence shifts the burden of proof to the employer to show that legitimate reasons would have led to the same decision regardless of any discriminatory motives. *Id*. (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-45 (1989), and *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1095-99 (3rd Cir. 1995)).

In the second type of case—the "pretext" case—there is no direct evidence of discriminatory animus but the plaintiff attempts to show that the employer's stated reason for the adverse action was a mere pretext for discrimination. *Id*. (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981), and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973)). In this type of case, discrimination can be shown indirectly by following the "pretext" method of proof set out in *McDonnell Douglas Corp.*, 411 U.S. at 802-05. *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1216-17 & n.11 (5th Cir. 1995). In general, the complainant must first establish a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. Although the precise

elements of this showing will vary depending on the allegations, *id*. at 802 n.13,[5] the plaintiff's burden at this stage of the case "is not onerous." *Burdine*, 450 U.S. at 253. The burden of going forward then shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802. The offer of a legitimate reason eliminates the presumption of discrimination created by the plaintiff's *prima facie* showing.[6] *Burdine*, 450 U.S. at 254. The burden then shifts back to the complainant to show that the employer's stated reason was a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 805-07; *Burdine*, 450 U.S. at 256. "The plaintiff can usually provide sufficient evidence of discriminatory intent by showing that the employer's proffered reason for the adverse action is false." *Quantum Chem. Co.*, 47 S.W.3d at 476 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000)).

The Texas Supreme Court has explained that, when the employer moves for summary judgment under Rule 166a(c), the employer has the summary-judgment burden to prove as a matter of law a legitimate, nondiscriminatory reason for the employment action. *See M.D. Anderson Hosp. & Tumor Inst.*, 28 S.W.3d at 24. Once the employer establishes a legitimate, nondiscriminatory

---

[5] The facts necessarily will vary in pretext cases, and the specifications of the *prima facie* proof required from the plaintiff will also vary in response to differing factual situations. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 n.13 (1973). In its motion for summary judgment, the Department did not attack Kennedy's ability to make out a *prima facie* case.

[6] "Establishment of the *prima facie* case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

7

reason, the burden then shifts to the employee (or, in this case, the applicant), as in other traditional summary-judgment cases, to raise a fact issue that the employer's reasons were a pretext for discrimination. *Id*. The employee can meet this burden by presenting evidence raising a fact issue or by showing that the employer's summary-judgment evidence fails to prove as a matter of law that the proffered reason was not a legitimate, nondiscriminatory one. *Id*.

In this case, the Department moved for traditional summary judgment and thus had the burden to establish as a matter of law that it had a legitimate, nondiscriminatory reason for not hiring Kennedy for Position I. *See* Tex. R. Civ. P. 166a(c); *M.D. Anderson Hosp. & Tumor Inst.*, 28 S.W.3d at 24. In support of its motion for summary judgment, the Department offered an affidavit from Elliot, in which he asserted that no "employee of [the Department] told me that the panel should favor any person during the interview process" and that he "did not hear anyone discuss any candidate's national origin as a relevant factor in scoring or in the final decision." In addition, he stated that no member of Department management directed him to choose a Hispanic person or to choose Hernandez, that Hernandez's performance in the interview "far exceeded" Kennedy's performance, and that the documents memorializing the candidates' evaluations reflected his judgment of their qualifications. An affidavit from Smith echoes these assertions. Also included in the summary-judgment record was an applicant "matrix"—a chart in which the qualifications of each of the five finalists were organized in a way to facilitate comparison. This chart indicates the Department's assessment that Hernandez and Kennedy were similarly qualified in terms of education, training, and experience and that, while Kennedy's work history with the Department may have weighed in her favor, the Department clearly indicated on the matrix that it judged Hernandez's

8

interview performance to far exceed Kennedy's.[7] We find that this evidence satisfied the Department's burden to establish as a matter of law a legitimate, nondiscriminatory reason for not hiring Kennedy for Position I. *See* Tex. R. Civ. P. 166a(c); *M.D. Anderson Hosp. & Tumor Inst.*, 28 S.W.3d at 24.

Thus, we must now turn to Kennedy's burden to raise a fact issue that the Department's legitimate nondiscriminatory reasons were a pretext for discrimination. *See M.D. Anderson Hosp. & Tumor Inst.*, 28 S.W.3d at 24. To raise a fact issue, Kennedy submitted her deposition testimony concerning a conversation she had with Hernandez at a Luby's restaurant after Hernandez had been passed over for a previous promotion opportunity. Kennedy testified that, at that time, Hernandez complained that Hispanics were underrepresented in Department management and that "the next time she was passed over, there was going to be a lawsuit." Kennedy assumed that Hernandez must have made similar statements to other Department employees. Kennedy further testified that she had expected to be rehired to Position I because of "the fact that I was the only qualified person for the job" and that her "assumption" was that Hernandez was hired because of the threat of litigation.

Kennedy also submitted deposition testimony from Smith, clarifying Kennedy's interview answers as recorded by Smith in her notes. For example, the second interview question

---

[7] In her brief and at oral argument, Kennedy contended that the Department failed to meet its summary-judgment burden because it "cooked the books" in documentation reflecting that it evaluated Hernandez more favorably than Kennedy. No evidence in the record supports this theory. Rather, to adopt Kennedy's theory, we would be required to accept Kennedy's assertions that she was more qualified than Hernandez and then infer, because the record reflects that the Department believed differently, that it had manipulated its documentation to support its actions.

asked, "Describe your experience with computers, software and automation systems." Interview notes in the record indicate that Kennedy's response was that she had "seen behind the scenes things." Smith was asked during her deposition about that question, "[I]sn't it true that she emphasized her actual hands-on experience with computer, software and automation systems by saying, 'I've seen behind the scenes things in this area?'" Smith responded, "Appears to be what she said, yes." When considering another question about working on multiple projects at the same time, Smith noted that Kennedy failed to identify any details concerning such work. Smith then looked at notes written by another interviewer from Hernandez's interview, which Smith did not attend. She observed that those notes did not indicate what details Hernandez provided in response to the same question. Further, Kennedy provided testimony from several Department employees that Hernandez had difficulty performing the job duties for Position I after she was hired. Finally, Kennedy provided documentation that Hernandez had complained in the past about job evaluations drafted concerning her performance for previous positions; Hernandez had felt that those evaluations were partially unfair.

To summarize, Kennedy attempted to present summary-judgment evidence supporting three propositions—that Hernandez was awarded Position I because she told Kennedy she might sue the Department if passed over for the next open supervisory position; that the Department may have been mistaken in its assessment of Hernandez's capabilities; and that Kennedy believed that she was the only qualified applicant. We will address each in turn to determine whether Kennedy met her burden to raise a fact issue that the Department's legitimate nondiscriminatory reasons were a pretext for discrimination.

10

Regarding Kennedy's assumption that Hernandez was awarded Position I because of the comments she made to Kennedy, Kennedy provided no evidence that Hernandez ever communicated any such threat to Department management or that any decisionmaker was ever aware of Hernandez's threats. For workplace comments to constitute legally sufficient evidence of discrimination, those comments must be (1) related to plaintiff's protected class, (2) proximate in time to the adverse employment decision, (3) made by an individual with authority over the employment decision at issue, and (4) related to the employment decision at issue. *See Krystek v. University of S. Miss.*, 164 F.3d 251, 256 (5th Cir. 1999); *Elgaghil v. Tarrant County Junior Coll.*, 45 S.W.3d 133, 140 (Tex. App.—Fort Worth 2000, pet. denied). Stray remarks made in the workplace by non-decisionmakers, without more, are not evidence of the employer's intent to discriminate. *See Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41-42 (5th Cir. 1996); *Elgaghil*, 45 S.W.3d at 140. Assuming for summary-judgment review that Hernandez actually made the alleged comments to Kennedy, the record does not establish that any person with authority over the employment decision made any comment about any applicant's national origin to Kennedy, to Hernandez, or to anyone else. In addition, Hernandez was not a decisionmaker; she made her comments to a co-worker outside the office; and the comment was not connected to any particular employment decision. Hernandez's comment is a stray remark that cannot constitute discrimination as a matter of law. *See Krystek*, 164 F.3d at 256.

As for Kennedy's evidence regarding Hernandez's capabilities, the evidence at most could suggest that the Department may have misjudged Hernandez's abilities. But even incorrect beliefs concerning an employee's performance or qualifications constitute legitimate,

11

non-discriminatory reasons. *See Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991). Incorrect beliefs do not establish discriminatory intent, even for the purposes of summary judgment, because we do not try in court the validity of good faith beliefs as to an employee's competence. *See id*. Rather, motive is the issue. *See id*. (citing *De Anda v. St. Joseph Hosp.*, 671 F.2d 850, 854 n.6 (5th Cir.1982)). The Department's mistaken judgment, if any, does not give rise to a fact question about the Department's motive.

Finally, Kennedy argues that, based on her comparison of the employment applications and interview notes, she was the only qualified applicant. To defeat summary judgment on this claim, Kennedy was required to demonstrate that she was "clearly better qualified" than the other applicants. *See Manning v. Chevron Chem. Co.*, 332 F.3d 874, 882 (5th Cir. 2003). Being "merely qualified" or "as qualified" is not sufficient. *See*, *e.g.*, *Equal Opportunity Employment Comm'n v. Louisiana Office of Cmty. Servs.*, 47 F.3d 1438, 1444 (5th Cir. 1995); *Odom v. Frank*, 3 F.3d 839, 845-46 (5th Cir. 1993); *Walther v. Lone Star Gas Co.*, 952 F.2d 119, 123 (5th Cir. 1992); *Thornbrough v. Columbus & Greenville R. R. Co.*, 760 F.2d 633, 647 (5th Cir. 1985). The "clearly better qualified" standard, rather, is a very high burden that required Kennedy to show that "no reasonable person . . . could have chosen the candidate selected over [her]." *See Celestine v. Petroleos de Venezuela SA*, 266 F.3d 343, 357 (5th Cir. 2001). To survive summary judgment, the unfairness of the employer's decision must be so apparent as to jump off the record and "slap [the court] in the face." *See Odom*, 3 F.3d at 847. Evidence that one applicant is better qualified than another must be more than merely subjective and speculative. *See Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir. 1996); *Molnar v. Ebasco Constructors, Inc.*, 986 F.2d 115, 119 (5th

12

Cir. 1993); *Elliott v. Group Med. & Surgical Serv.*, 714 F.2d 556, 564 (5th Cir.1983), *cert. denied*, 467 U.S. 1215 (1984).

We have thoroughly reviewed the record and cannot determine that Kennedy was clearly better qualified for the position than Hernandez appeared to be when the Department made the hiring decision. There were many similarities between the two applicants; the most significant documented differences were Hernandez's performance during the interview and Kennedy's previous nine-month experience in Position I. Given that we are "reluctant to substitute our views for those of the individuals charged with the evaluation duty by virtue of their own years of experience and expertise in the field in question," we find that Kennedy's evidence does not raise a fact question on pretext based on her comparison of qualifications. *See Odom*, 3 F.3d at 847.

We have found that the Department met its initial burden to establish as a matter of law a legitimate, nondiscriminatory reason for not hiring Kennedy for Position I. We have also found that Kennedy failed to meet her burden to show that a fact issue exists concerning whether the Department's reasons were a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 805-07; *Burdine*, 450 U.S. at 256. Therefore, the district court did not err in granting summary judgment for the Department on Kennedy's national origin discrimination claim. We overrule Kennedy's first issue.

**Retaliation claim**

In her second issue, Kennedy argues that the district court erred in granting no-evidence summary judgment in favor of the Department on her retaliation claim. Kennedy pleaded

13

that the Department's refusal to hire her for Position II constituted unlawful retaliation for filing an EEOC claim regarding Position I.

An employer commits an unlawful employment practice if it retaliates or discriminates against a person who files a complaint. Tex. Lab. Code Ann. § 21.055(3). To successfully assert a claim of retaliation discharge, the plaintiff must first establish, by a preponderance of the evidence, a *prima facie* case of discrimination, which, when established, gives rise to a presumption that the employer unlawfully discriminated against the employee. *Graves v. Komet*, 982 S.W.2d 551, 554 (Tex. App.—San Antonio 1998, no pet.). A plaintiff proves a *prima facie* case of retaliation by showing (1) that she engaged in a protected activity, (2) that the employer took an adverse employment action against her, and (3) a causal connection between the protected activity and the adverse employment action. *Id.*; *Mayberry v. Texas Dep't of Agric.*, 948 S.W.2d 312, 315 (Tex. App.—Austin 1997, writ denied); *see Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 298 (5th Cir. 1994). To meet her burden regarding the causation element, a plaintiff must produce evidence that the decisionmaker responsible for the adverse employment action knew of the plaintiff's protected activity and was motivated by it. *See Marsaglia v. University of Tex., El Paso*, 22 S.W.3d 1, 5 (Tex. App.—El Paso 1999, pet. denied); *cf. Romo*, 48 S.W.3d at 273 n.2 (when filing traditional motion for summary judgment, employer presented no evidence that decision to terminate was made by persons with no knowledge of employee's protected activity).[8] If the plaintiff can establish a *prima facie* case of retaliation, the burden shifts to the employer to rebut the presumption

---

[8] *See also Higgs v. Trammell Crow Co.*, No. 05-04-00547-CV, 2005 Tex. App. LEXIS 1058, at *5 (Tex. App.—Dallas Feb. 10, 2005, no pet.); *Ibezim v. Tex. Dep't of Health*, No. 03-03-00308-CV, 2004 Tex. App. LEXIS 6252, at *20 (Tex. App.—Austin July 15, 2004, no pet.).

by setting forth through admissible evidence a legitimate non-discriminatory reason for the adverse employment action. *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 254 (1981); *McDonnell Douglas*, 411 U.S. at 802. If the defendant proffers a legitimate non-discriminatory reason, the burden shifts back to the plaintiff to prove that the purported nondiscriminatory reason is a mere pretext for retaliation. *McDonnell Douglas*, 411 U.S. at 802. The plaintiff carries this burden when she either directly persuades the fact-finder that "a discriminatory reason more likely motivated the employer or indirectly by showing that the proffered reason is unworthy of credence." *Burdine*, 450 U.S. at 256. The ultimate burden of persuading the fact-finder that the employer engaged in intentionally discriminatory conduct remains at all times with the plaintiff. *Id*. at 253.

The Department moved for "no evidence" summary judgment on the causation element of Kennedy's retaliation claim. It asserted that there was no evidence that Smith, the Position II decisionmaker, knew either of Kennedy's EEOC claim or that Kennedy had applied for Position II at the time Smith interviewed candidates and filled that position. The Department added that there was no evidence that Kennedy's "application was deliberately withheld from consideration because of her prior complaint of discrimination." We construe the Department's motion to challenge Kennedy's *prima facie* case.[9]

---

[9] In its appellate briefing, the Department argues that, in addition to targeting the causation element of Kennedy's *prima facie* case, it is also challenging Kennedy's ability to "overcome [the Department's] legitimate non-discriminatory reason, i.e., the hiring supervisor did not receive [Kennedy's] application prior to making a hiring decision." However, unlike the case with Kennedy's national origin discrimination claim, the Department did not seek summary judgment to establish that it had proffered a legitimate non-discriminatory reason for its refusal to hire Kennedy in Position II. Unless and until the Department meets this burden, there is nothing for Kennedy to "overcome" on summary judgment except her initial burden to establish her *prima facie* case.

A party may move for summary judgment under Rule 166a(i) on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. Tex. R. Civ. P. 166a(i); *Western Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). Unless the nonmovant produces summary-judgment evidence raising a genuine issue of material fact on the challenged elements, the court must grant the motion. Tex. R. Civ. P. 166a(i) & cmt.; *Urena*, 162 S.W.3d at 550. In reviewing a no-evidence claim, we view the evidence in a light that tends to support the finding of the disputed fact and disregard all evidence and inferences to the contrary. *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002). If more than a scintilla of evidence exists, it is legally sufficient. *Goodman*, 80 S.W.3d at 577. Evidence is more than a scintilla when it "rises to the level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). When evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, it is no more than a scintilla and, in legal effect, is no evidence. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). As with a traditional summary-judgment motion, we must construe the evidence in favor of the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Jackson v. Fiesta Mart*, 979 S.W.2d 68, 70 (Tex. App.—Austin 1998, no pet.).

Both parties reference two affidavits attached to the Department's no-evidence motion, that of Smith and Lindsay Horne, a staffer in the Department's human resources department. *See Binur v. Jacobo*, 135 S.W.3d 646, 651 (Tex. 2004). Smith's affidavit recounts that she posted

16

Position II, "received the first packet of applications and began interviewing candidates on October 9, 2002," and made a selection without ever receiving Kennedy's application or even knowing that Kennedy had applied for the position. Smith added, "I did not have any information or knowledge concerning any equal opportunity complaint or any other complaint made by Cathren Kennedy during the time I was reviewing applications, choosing persons to be interviewed, and selecting the final candidate." In sum, Smith avers that when she interviewed and hired for Position II, she was unaware either that Kennedy had applied for this job or that Kennedy had filed a complaint regarding Position I.

In her affidavit, Horne explained the context in which she processed and forwarded applications for Smith's review, the Department's internal procedures for screening and filling an "open until filled" position:

- Upon receipt, applications are logged into a Department database (the "EEO database") by a staffer, and placed in a file for screening.

- Applications are then screened according to the qualifications outlined on the job posting. Those that meet qualifications are "forwarded" to the hiring supervisor; those that do not are designated "DNM" (Does Not Meet) and are not forwarded.

- Applications from current employees that meet qualifications are designated "Meets-Current."

- Applications are "forwarded" to the relevant hiring supervisor every Friday.

- The hiring supervisor has the choice of having the applications "forwarded" either by mail or by being made available for the supervisor to pick up.

- This process continues until a selection is made.

17

Horne explained that, in the case of the Position II posting, Smith, the hiring supervisor, requested that applications be screened based on minimum qualifications and left for pickup in the Human Resources department. Horne recounted that four applications made available for Smith to pick up on Friday, September 27, 2003, and twenty-three were ready on October 4. Screening of the October 4 batch of twenty-three applications was not completed until approximately 2 p.m. that day. Meanwhile, around noon on October 4, Kennedy had faxed her application to the Department's "Hiring and Selection" fax line. Horne explained that "the application needed to be logged in the EEO database and forwarded to the posting folder. With the volume of applications that are received, the application would not have been forwarded by 2:00 and was screened the following Friday." Later, Horne explained, Kennedy's application was in fact screened, designated "Meets-Current," and forwarded with a batch of fourteen other applications on Friday, October 11. These applications were never picked up by Smith who, according to her affidavit, had already decided on a hire.

To survive summary judgment, Kennedy had the burden to raise a fact issue that Smith (and/or some other decisionmaker) took the adverse action of refusing to interview and hire Kennedy with knowledge of Kennedy's complaint. To raise a fact issue that Smith had knowledge of Kennedy's complaint, Kennedy points to correspondence and communications among the Department's managerial staff concerning the complaint, some of which referred to Smith as one of the panel interviewers for Position I.

The record reflects that Kennedy filed her national origin discrimination complaint with the EEOC on August 27. On August 30, the EEOC notified the Department of Kennedy's

18

complaint and suggested mediation. By September 24, several members of the Department's managerial staff were aware of the complaint—the Department's director of human resources, Frank Pearce, Pedro Lopez in the Department's employee relations office, the Department's deputy director of legal services, and the Department's human resources attorney—as evidenced by the circulation notes on Lopez's memorandum recommending that the Department mediate the complaint.[10]

However, Kennedy points to no evidence from which it could be inferred that Smith actually received any such correspondence or communications. The closest evidence Kennedy produces is her own deposition testimony that she "assume[d]" Smith knew of the complaint because of the small number of employees involved in the work involving both Position I and Position II. Kennedy has not produced more than a scintilla of evidence to support that inference, and we cannot simply impute the knowledge of "the Department" to Smith. *See Marsaglia*, 22 S.W.3d at 5.[11]

Additionally, Kennedy has failed to raise a fact issue that Smith ever received or was aware of Kennedy's Position II application. Kennedy attempts to rely on an email sent by Horne at 2 p.m. on Friday, October 4 stating, "Applications for your job posting are ready for pick up at the HR front." Smith read this email at 4:08 p.m. that afternoon. Kennedy would have us infer from this email that Smith picked up and reviewed Kennedy's application before commencing interviews during the following week. However, proof that Smith might have picked up *some* applications in

---

[10] Kennedy testified that she informed Judy Lutz, a Department employee, of her intent to file a complaint with the EEOC. The record contains no evidence concerning Lutz's position with the Department or that Lutz either had any role in the hiring decision for Position II or communicated knowledge of the complaint to Smith or any other person.

[11] Kennedy also appears to argue that it is enough for "the Department" to have had knowledge of her complaint. It is not. *See Higgs*, 2005 Tex. App. LEXIS 1058, at *5; *Ibezim*, 2004 Tex. App. LEXIS 6252, at *20.

response to Horne's email does not support an inference that Kennedy's application was among them. Indeed, the Department presented undisputed evidence that Kennedy's application was not processed and made available to Smith until the following week.[12]

There is no evidence that any decisionmaker other than Smith was involved in the interviewing and hiring of Position II. Horne admitted to "limited knowledge" of Kennedy's complaint at the time she was processing the applications, but Kennedy produced no evidence that Horne was a decisionmaker regarding whether or when applications should be forwarded to Smith or that Horne withheld Kennedy's application at the direction of any decisionmaker. To the contrary, Horne's uncontroverted testimony is that she withheld Kennedy's application on October 4 solely because of logistical problems created by the volume of applications and the Department's screening procedures. *See Maarouf v. Walker Mfg. Co.*, 210 F.3d 750, 755 (7th Cir. 2000). In fact, the record shows that Horne later processed Kennedy's application with a "Meets–Current" designation, in a manner consistent with the Department's normal screening procedures, and made it available to Smith. By this time, it is undisputed that Smith had already decided on a hire for Position II.

The district court did not err in granting no-evidence summary judgment in favor of the Department on Kennedy's retaliation claim. We overrule Kennedy's second issue.

---

[12] For the same reason, we disagree with Kennedy's assertion that Horne's affidavit is inconsistent with her email and presents a fact issue.

Kennedy also urges us to draw inferences from the order of documents produced by the Department in discovery. After a copy of Horne's email, "[t]he appellant's application follows on the very next page of documents produced by appellee." To Kennedy, "[t]his arrangement strongly suggests that Pat Smith got the appellant's application on October 4, 2002." We disagree that we can draw such an inference merely from the order in which these documents are arranged in the Department's document production.

## CONCLUSION

We have overruled Kennedy's two issues. We affirm the district court's grant of summary judgment in favor of the Department on Kennedy's national origin discrimination claim and her retaliation claim.

_____

Bob Pemberton, Justice

Before Justices B. A. Smith, Puryear and Pemberton

Affirmed

Filed:   December 22, 2005